1

2

3

4

5

6

7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11
ALEXANDRO AGUIRRE and,                    CASE NO. 1:10-cv-00311-LJO-GSA
12 RAFAEL AGUIRRE,

13                      Plaintiffs,         **ORDER ON JLG'S MOTION FOR SUMMARY**
            vs.                             **JUDGMENT** (Doc. 74)
14
HOME DEPOT U.S.A., INC., et al.,
15
                      Defendants.
16
                                          /
17

18                          **I. INTRODUCTION**

19          Plaintiffs Alexandro and Rafael Aguirre (collectively "plaintiffs") filed a personal injury suit

20 against Home Depot U.S.A., Inc. ("Home Depot") and JLG Industries, Inc. ("JLG") (collectively

21 "defendants") for injuries Alexandro[1] sustained while operating a JLG Pro-Boom 35 lift ("boom lift").

22 Now before the Court is JLG's motion for summary judgment.  JLG contends that it is entitled to

23 summary judgment because there is insufficient evidence to show that the boom lift contained a design,

24 manufacturing, or warning defect.  Plaintiffs argue that summary judgment is inappropriate because

25 triable issues exist as to whether the boom lift is defective.  Having considered the parties' arguments

26 and submissions, JLG's motion is GRANTED.

27 ─────────────────

28          [1] Because plaintiffs have the same last name, this Court will refer to them individually by their first names in order
to avoid confusion.  No disrespect is intended.

                                          1

## II. BACKGROUND

**A. Facts**

Alexandro operates a small landscaping business.  (Alexandro Depo., Vol. I, p. 23).   On November 23, 2009, he rented a boom lift from the Home Depot Store in Modesto, California in order to trim trees at an apartment complex.  (Doc. 87, p. 12, ¶ 8).  Alexandro planned to trim the trees with a rented pole saw.  (Doc. 87, p. 9, ¶ 21).

### Safety Manual

Inside the basket of the boom lift next to the control panel was JLG's Operation and Safety Manual ("Safety Manual") which requires users to read it before operating the machine.[2]  (Doc. 87, p. 3, ¶ 9-10).  Also, in the Safety Manual is an explanation of how the "function enable" feature on the machine works.  (Doc. 87, p. 18, ¶ 49).  The Safety Manual explains:

> To operate any function, the enable switch must be activated and the function selected within seven seconds.  If a function is not selected within seven seconds, or if a seven second lapse between ending one function and beginning the next, the enable light will go out and the enable switch must be released and depressed again to enable the controls.

(Doc. 87, p. 18, ¶ 49).  Alexandro did not read the Safety Manual before operating the boom lift. (Alexandro Depo., Vol. II, p. 204).  The boom lift also contained six warning labels, which warned the operator to stay at least ten feet from power lines.[3]  (Doc. 87, p. 2, ¶ 7).  Similarly, the pole saw manual forbids operators from using the tool in the vicinity of wires or cables which carry an electric current.[4] (Doc. 87, p. 3, ¶ 8).

Before operating the boom lift with the basket controls, Alexandro tested the boom lift with the ground controls and the machine worked properly.  (Doc. 87, p. 12, ¶ 7).  Prior to the accident however, there was hesitation in the lift's extension function and it would "jerk a little bit" for a "split second."

---

[2] Plaintiffs reserve their right to contest or object to this fact at trial but concede it for purposes of this motion.  (Doc. 87, p. 3, ¶ 9-10).

[3] Plaintiffs reserve their right to contest or object to this fact at trial but concede it for purposes of this motion.  (Doc. 87, p. 2, ¶ 7).

[4] Plaintiffs reserve their right to contest or object to this fact at trial but concede it for purposes of this motion.  (Doc. 87, p. 3, ¶ 8).

1   (Doc. 87, p. 13,  ¶ 12).  Similarly, the lift did not raise smoothly, it would "hesitate," and there would

2   be "jerking."  (Doc. 87, p. 13, ¶ 13).

3                                          **The Accident**

4            When Alexandro finished trimming the tree, he rested the pole saw on the floor of the boom lift

5   basket.  (Doc. 87, p. 13, ¶ 16).  Alexandro tilted the saw at roughly 105 degrees from the basket floor,

6   away from the power lines, and secured it with his right hand.  (Doc. 87, p. 13, ¶ 16).  He then attempted

7   to lower the boom lift.  (Alexandro Depo., Vol. II, p. 177).  First, he pulled up the safety switch and

8   pulled the machine's joystick control toward his body.  (Alexandro Depo., Vol. II, p. 178).  Next, he

9   pulled the joystick slightly, which would result in a slow descent, but nothing happened.  (Alexandro

10  Depo., Vol. II, p. 180).  Then, he pulled it halfway, which would result in a "half speed" descent but

11  nothing happened.  (*Id.*).  Finally, Alexandro pulled the joystick all the way toward his body, which

12  would result in a full speed descent, but the boom lift did not budge.  (*Id.*).  After three failed attempts

13  to lower the boom lift, the boom lift unexpectedly moved "really fast" from under Alexandro's feet and

14  he felt like he was going to fall.  (Doc. 87, p. 13, ¶ 18).  When this occurred Alexandro threw his arms

15  in the air to catch his balance.  (Doc. 87, p. 13, ¶ 18).  At this point, the pole saw made contact with an

16  overhead power line and Alexandro felt electric shock.  (Doc. 87, p. 13, ¶ 18).  Approximately five

17  minutes after Alexandro was shocked, he again attempted to lower the boom lift and the boom lift

18  shimmied up and down but would not lower.  (Doc. 87, p. 13, ¶ 19).  When the firefighters arrived,

19  Alexandro tried to lower the boom lift again and this time it worked.  (Alexandro Depo. Vol. II, p. 196).

20  Alexandro suffered burns and scarring as a result of the electric shock.  (Doc. 87, p. 2, ¶ 4).

21           Rafael, Alexandro's father, witnessed the accident.  (Doc. 87, p. 14, ¶ 20).  Rafael explained that

22  when Alexandro tried to lower the boom lift, the machine jumped upwards instead of climbing down.

23  (Rafael Depo. p. 37-38).  When the machine jumped, Rafael saw "a ball of fire[] [a]nd a lot of smoke,"

24  (Rafael Depo. p. 111), his son screamed, and Rafael thought Alexandro had died (Rafael Depo. p. 39).

25  Rafael believes Alexandro lost consciousness because when he yelled to Alexandro, Alexandro did not

26  respond.  (Rafael Depo. p. 62-63).

27           Kim Galbraith ("Ms. Galbraith"), the property manager for the adjacent apartment complex,

28  testified that she was working on the day of the accident, heard screams, and ran toward the boom lift.

1   (Galbraith Depo. p. 11). When Ms. Galbraith arrived at the scene, Alexandro was "laying . . . sprawled
2   out" in the bucket. (Galbraith Depo. p. 15). Eventually, she saw Alexandro reach for the joystick
3   controller. (Galbraith Depo. p. 17). When he hit the lever, the basket moved and jerked. (Galbraith
4   Depo. p. 17). Ms. Galbraith explained that the basket would go down and up but it did not stay down.
5   (Galbraith Depo. p. 18). This occurred three or four times until the firefighters arrived. (Galbraith Depo.
6   p. 18).

7                                            **The Curtis Inspections**

8          Prior to the accident, on July 24, 2009, Mark Curtis ("Mr. Curtis"), an employee of Compact
9   Power services, inspected the boom lift. (Doc. 87, p. 14, ¶ 28, 30). Compact Power Services is a
10  company that services and maintains machines and technical equipment. (Curtis Depo. p. 7). When Mr.
11  Curtis inspected the machine he noted several deficient items including a cut "main boom cable" and
12  a safety decal that was so damaged it could no longer be read. (Doc. 87, p. 16, ¶ 36). Mr. Curtis
13  acknowledged that his use of the term "main boom cable" in his inspection report was not very specific
14  but that he was probably referring to the control cable that goes from the boom down to the platform but
15  he was unsure if he was referring to the control cable or a hydraulic line. (Curtis Depo. p. 29:9-11; p.
16  32:23-33:10). Mr. Curtis further testified that the control cable sends the signal from the basket controls
17  to the main board. (Doc. 87, p. 16, ¶ 38). Thus, the control cable allows one to operate the machine
18  from the basket. (Doc. 87, p. 16, ¶ 38). Mr. Curtis also explained that if this cable were totally severed,
19  one would not be able to operate the basket using the basket controls. (Doc. 87, p. 16, ¶ 38). In addition,
20  Mr. Curtis explained that damage to this cable could cause one of the functions to operate improperly.
21  (Doc. 87, p. 16, ¶ 38). Mr. Curtis further testified that he inspected the boom lift shortly after the
22  accident and the wire boom cable harness, which he testified is more likely than not the same damage
23  he found during his initial inspection, still needed to be fixed. (Doc. 87, p. 17, ¶ 47).

24                                            **Expert Opinions**

25         Subsequent to the accident, the boom lift was inspected by three experts. One hired by plaintiffs
26  and two hired by defendants. All three experts inspected the boom lift and wrote reports regarding their
27  opinions. (Doc. 78-3; Doc. 82, p. 6; Doc. 83, p. 6). Plaintiffs' expert, Thomas Braun, noted that:
28                 No instruction or warning is given on or near the platform control panel to

                                                    4

1    explain the "Function Enable" feature or the fact that after seven seconds of
2    activation without operation, all functions are disabled.  This may lead an
     operator to incorrectly assume that the machine is not working properly or has
     stopped working altogether.[5]
3  (Doc. 78-3, p. 7).

4  **B. Procedural History**

5      In January 2010, plaintiffs commenced the instant personal injury suit against Home Depot and

6  JLG in Stanislaus County Superior Court.  (Doc. 1-1, p. 5).  Defendants removed the action to this Court

7  on February 22, 2010.  (Doc. 1).  Plaintiffs allege the following claims: (1) strict products liability; (2)

8  negligence; (3) breach of implied warranty; and (4) negligent infliction of emotional distress.  (Doc. 41).

9  Now before the Court is JLG's motion for summary judgment filed on July 13, 2012.  (Doc. 74).  JLG

10 contends that plaintiffs cannot sustain their burden of proof regarding the alleged defectiveness of the

11 boom lift.  (Doc. 74-1).  Plaintiffs filed an opposition to the motion (Doc. 86) to which JLG replied

12 (Doc. 103).  On August 9, 2012, the Court found this matter suitable for decision without oral argument

13 and took the matter under submission, pursuant to Local Rule 230(g).  (Doc. 104).

14                          **III. LEGAL STANDARD**

15     Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery,

16 and the affidavits provided establish that "there is no genuine dispute as to any material fact and the

17 movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A material fact is one which

18 may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

19 dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of

20 the nonmoving party.  *Id*.

21     A party seeking summary judgment "always bears the initial responsibility of informing the

22 district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

23 answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

24 demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

25 323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an

26 issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

27

28     _____

       [5] JLG disagrees with Mr. Braun's opinion.  (Doc. 87, p. 18, ¶ 50).

1  the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue

2  as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely

3  by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing

4  *Celotex*, 477 U.S. at 323).

5        If the movant has sustained its burden, the nonmoving party must "show a genuine issue of

6  material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v.*

7  *Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original).  The nonmoving party must go

8  beyond the allegations set forth in its pleadings. *See* FED. R. CIV. P. 56(c).  "[B]ald assertions or a mere

9  scintilla of evidence" will not suffice.  *Stefanchik*, 559 F.3d at 929.  Indeed, the mere presence of "some

10  metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment.

11  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record

12  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

13  'genuine issue for trial.'"  *Id.* at 587 (citation omitted).

14        In resolving a summary judgment motion, "the court does not make credibility determinations

15  or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984.  Rather, "[t]he evidence of the [nonmoving

16  party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S.

17  at 255.  Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual

18  predicate from which the inference may justifiably be drawn. *See Richards v. Nielsen Freight Lines*, 602

19  F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

## IV. DISCUSSION

### A. Procedural Requirements

22        Plaintiffs argue that JLG's motion for summary judgment should be denied because JLG has

23  failed to comply with California's procedural requirements for filing a motion for summary judgment.

24  Plaintiffs assert that JLG has failed to comply with California's requirement that the moving party must

25  set forth all material evidence regarding the issues at hand.  Federal courts exercising diversity

26  jurisdiction in an action based on state law apply state law to all substantive issues and federal rules to

27  all procedural matters. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938).  Because plaintiffs argue

28  that JLG has failed to comply with California's procedural requirements and California's procedural

1   requirements are of no import in federal court, this contention fails.

2   **B. Product Defect**

3   JLG contends that it is entitled to summary judgment because there is insufficient evidence to

4   show that the boom lift contained a design, manufacturing, or warning defect.

5   "A manufacturer may be held strictly liable for placing a defective product on the market if the

6   plaintiff's injury results from a reasonably foreseeable use of the product." *Saller v. Crown Cork & Seal*

7   *Co., Inc.*, 187 Cal. App. 4th 1220, 1231 (2010). "Products liability may be premised upon a theory of

8   design defect, manufacturing defect, or failure to warn." *Id.*

9   **1. Manufacturing/Design Defect**

10   "California recognizes two distinct categories of product defects: manufacturing defects and

11   design defects." *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1119 (2002). "A

12   manufacturing defect exists when an item is produced in a substandard condition." *Id.* at 1120. "Such

13   a defect is often demonstrated by showing the product performed differently from other ostensibly

14   identical units of the same product line." *Id.*

15   "A design defect, in contrast, exists when the product is built in accordance with its intended

16   specifications, but the design itself is inherently defective." *Id.* "[P]laintiff bears an initial burden of

17   making 'a prima facie showing that the injury was proximately caused by the product's design.'" *Perez*

18   *v. VAS S.p.A.*, 188 Cal. App. 4th 658, 678 (2010) (quoting *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 431

19   (1978)). "This showing requires evidence that the plaintiff was injured while using the product in an

20   intended or reasonably foreseeable manner and that the plaintiff's ability to avoid injury was frustrated

21   by . . . the nature of the product's design." *Id.*

22   JLG argues that plaintiffs cannot demonstrate that the boom lift was defective because there is

23   insufficient evidence to show that the boom lift's design or manufacture proximately caused plaintiff's

24   injuries.  In support of its argument, JLG asserts that the boom lift was designed in accord with industry

25   standards and that plaintiffs' expert cannot show that the boom lift contains a design or manufacturing

26   defect.  Plaintiffs contend that there is a genuine factual issue regarding whether the boom lift contains

27   a design or manufacturing defect because three witnesses saw the boom lift act improperly on the day

28   of the incident, the control cable was damaged, and the boom lift does not comply with industry codes.

1    The Court finds that the evidence set forth by plaintiffs does not show a genuine issue of material fact.

2    "In order to avoid summary judgment, a non-movant must show a genuine issue of material fact

3    by presenting *affirmative evidence* from which a jury could find in his favor." *F.T.C.*, 559 F.3d at 929.

4    Plaintiffs argue that there is a genuine factual dispute regarding whether the boom lift contains a design

5    or manufacturing defect because three witnesses saw the boom lift act improperly on the day of the

6    incident. Although Alexandro, Rafael, and Ms. Galbraith all testified that the boom lift's raise function

7    did not run smoothly on the day of the accident (Doc. 87, p. 13,  ¶ 12, 13; p. 14, ¶ 20; p. 18, ¶ 52, 54),

8    this testimony, standing alone, does not show that the boom lift acted improperly because of a design

9    or manufacturing defect. *See Barrett v. Atlas Powder Co.*, 86 Cal. App. 3d 560, 564 (1978) (in a

10   products liability case, "it is not enough that the action happened . . . [t]he plaintiff must prove by

11   competent evidence that the product was either defective in design or manufacture or both, thus causing

12   the injury").

13   Plaintiffs also argue that there is a genuine dispute because the control cable was damaged.

14   Plaintiffs point to Mr. Curtis' deposition testimony which provides that the control cable was damaged

15   before and after Alexandro's accident.  (Doc. 87, p. 16, ¶ 36; p. 17, ¶ 47).  Plaintiffs also point  to the

16   fact that both Mr. Curtis and plaintiffs' expert stated that damage to the control cable could affect the

17   functionality of the boom controls.  (Doc. 87, p. 16, ¶ 38; Doc. 78-3, p. 7).  Absent from this evidence

18   is an explanation as to how a design or manufacturing defect caused or contributed to the damage to the

19   control cable. *See Perez*, 188 Cal. App. 4th at 678 (plaintiff must show that his injury was proximately

20   caused by the product's design).

21   Finally, plaintiffs contend that the boom lift did not comply with the standards set forth by the

22   American National Standards Institute ("ANSI").  Plaintiffs list fourteen code violations by numeric

23   section but fail to explain what the sections require and how JLG failed to comply with them.  This is

24   insufficient to show a genuine issue of material fact. *See F.T.C.*, 559 F.3d at 929 (the nonmoving party

25   must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could

26   find in [its] favor.").

27   Plaintiffs reference a particular code section, ANSI/SIA A92.2-2001 Section 4.3.1., which

28   provides that, "[a]ll controls should be clearly identified as to their function and protected from damage

8

1  and unintentional actuation."  Plaintiffs assert that JLG failed to comply with this section because the

2  control cable was damaged which affected the functionality of the controls thus, the controls were not

3  "protected from damage" as required.  Although the control cable may have been damaged, plaintiffs

4  fail to explain how a design or manufacturing defect created or contributed to the damage.  In addition,

5  the code section plaintiffs rely upon provides that the controls should be protected from damage, it does

6  not reference the control cable.  Further, plaintiffs' expert's report does not mention a design or

7  manufacturing defect.

8        The evidence set forth by plaintiffs does not show a genuine issue of material fact regarding

9  whether the boom lift contained a design or manufacturing defect.  Thus, JLG's motion for summary

10  judgment regarding the existence of a design or manufacturing defect is GRANTED.

11        **2. Failure to Warn**

12        "California recognizes failure to warn as a species of design defect products liability."  *Saller*,

13  187 Cal. App. 4th at 1238.  "Under the failure to warn theory, a product may be defective even though

14  it is manufactured or designed flawlessly."  *Id*.  "Strict liability failure to warn requires the plaintiff to

15  prove that the defendant 'did not adequately warn of a particular risk that was known or knowable in

16  light of the generally recognized and prevailing best scientific and medical knowledge available at the

17  time of the manufacture and distribution . . .'"  *Id*. at 1239 (quoting *Anderson v. Owens-Corning*

18  *Fiberglas Corp.*, 53 Cal. 3d 987, 1002-03 (1991)).  "To be liable in California . . . the plaintiff must

19  prove that the defendant's failure to warn was a substantial factor in causing his or her injury.  The

20  natural corollary to this requirement is that a defendant is not liable to a plaintiff if the injury would have

21  occurred even if the defendant had issued adequate warnings."  *Huitt v. S. California Gas Co.*, 188 Cal.

22  App. 4th 1586, 1604 (2010).

23        At issue here, is the boom lift's "function enable" feature.  According to the Safety Manual in

24  order

25        [t]o operate any function, the enable switch must be activated and the function
        selected within seven seconds.  If a function is not selected within seven
26        seconds, or if a seven second lapse between ending one function and beginning
        the next function, the enable light will go out and the enable switch must be
27        released and depressed again to enable the controls.

28

9

1   (Doc. 87, p. 18, ¶ 49).  Plaintiffs' expert's report provides that:

2
3              No instruction or warning is given on or near the platform control panel to
               explain the "Function Enable" feature or the fact that after seven seconds of
               activation without operation, all functions are disabled.  This may lead an
4              operator to incorrectly assume that the machine is not working properly or has
               stopped altogether.
5

6   (Doc. 78-3, p. 7).  JLG argues that plaintiffs cannot show any warning defect because their expert's

7   opinion that the lack of a warning on the control panel "may lead an operator to incorrectly assume that

8   the machine is not working properly or has stopped altogether" (Doc. 78-3, p. 7) is speculative.

9   Plaintiffs contend that there is a triable issue as to whether the warnings provided were adequate because

10  the "function enable" feature is only explained on a single page of the 130 page Safety Manual and there

11  are no instructions, warnings, or decals on or near the platform or control panel that explain the "function

12  enable" feature.  In its reply, JLG asserts that the "function enable" feature is explained in the Safety

13  Manual and the Safety Manual was next to the control console.  JLG further points out that the control

14  panel contains an enable indicator light which clearly shows when the "function enable" feature is

15  activated.

16          Regardless of whether JLG's explanation of the "function enable" feature was adequate, plaintiffs

17  are unable to show that Alexandro's misunderstanding of this feature was a substantial factor in causing

18  his injuries.  Plaintiffs assert that a reasonable fact finder could conclude that it was the deactivation and

19  re-activation of the "function enable" switch that led to the unexpected movement which knocked

20  Alexandro off his feet causing him to make contact with the power lines.  The problem with this

21  argument is that it is not supported by Alexandro's deposition testimony.  During Alexandro's deposition

22  he confirmed that he

23              raised up the big red button.  Then [he] pulled the joystick towards [him] a little
               bit, and without letting it go back to neutral, [he] pushed it or pulled it to about
24             halfway, and without letting it go back to neutral, [he] pulled it all the way
               towards [him], and nothing happened.
25

26  (Alexandro Depo., Vol. II, p. 182:10-16).  Alexandro then took a step away from the controls and the

27  boom lift moved really fast.  (Alexandro Depo., Vol. II, p. 182-83).  Alexandro confirmed that his hands

28  were not on the controls when the boom lift moved.  (Alexandro Depo., Vol. II, p. 183-84).  According

10

to the Safety Manual, if a function is not selected within seven seconds of activating the enable switch then the controls will not function until the enable switch is released and depressed again. (Doc. 87, p. 18, ¶ 49). Thus, even if Alexandro "was not aware of the 'function enable' feature" (Doc. 88, p. 2, ¶ 14) his lack of awareness would have immobilized the boom lift, it would not have led to the sudden movement complained of. Accordingly, plaintiffs are unable to show that JLG's failure to warn was a substantial factor in causing his injuries.

JLG's motion for summary judgment regarding its alleged failure to warn is GRANTED.

**C. Misuse of the Boom Lift**

JLG contends that Alexandro misused the boom lift as a matter of law because he admitted he knew of the dangers associated with the power line and read JLG's decals which warned of the dangers of a power line and yet ignored these warnings and made contact with the power line.

"[T]he doctrine of contributory negligence, which bars all recovery when the plaintiff's negligent conduct has contributed as a legal cause in any degree to the harm suffered by him," does not apply in California. *Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 808 (1975). Rather, a system of comparative negligence is in place, which assesses liability in direct proportion to fault. *Id*. This system of comparative fault applies to actions founded on strict products liability. *Daly v. General Motors Corp.*, 20 Cal. 3d 725, 742 (1978). Accordingly, evidence of Alexandro's alleged misuse of the boom lift pertains to the issue of damages and is not relevant at this stage of the litigation.

**D. Res Ipsa Loquitor Jury Instruction**

Plaintiffs argue that a res ipsa loquitor jury instruction would be appropriate and that this theory of liability alone, given the facts in the record, warrants the court's denial of JLG's motion for summary judgment.

"In California, the doctrine of res ipsa loquitur is defined by statute as 'a presumption affecting the burden of producing evidence.'" *Brown v. Poway Unified School Dist.*, 4 Cal. 4th 820, 825 (1993) (quoting Cal. Evid. Code § 646(b)). "The presumption arises when the evidence satisfies three conditions: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the

1    plaintiff." *Id.* at 825-26 (internal quotation marks omitted). "[I]n cases where the defendant has

2    relinquished control of the instrumentality . . . plaintiff may raise the inference that it was defective when

3    it left defendant's possession by demonstrating that it has not been improperly handled or its condition

4    otherwise changed since leaving the defendant's control." *Bedford v. Re*, 9 Cal. 3d 593, 597 (1973).

5        A res ipsa loquitor jury instruction does not apply here. Contact with an overhead power line

6    normally does not occur in the absence of someone's negligence however, there is a genuine issue as to

7    whether Alexandro's actions contributed to the cause of the accident. In addition, the evidence set forth

8    by plaintiffs to show that the boom lift was not "improperly handled or its condition otherwise changed

9    since leaving the defendant's control," *id.*, is unpersuasive. Plaintiffs argue that the fact Alexandro

10   hitched the boom lift to his truck, towed it two to three miles to the site, unhitched it, and performed

11   function tests with the ground controls shows that the boom lift was not mishandled or changed in any

12   way. The boom lift was sold to Home Depot over two years prior to the accident (Lange Depo. Ex. 10),

13   rented on numerous occasions by different individuals (Lange Depo. Ex. 10), and received repairs

14   throughout its life (Lange Depo. Ex. 7; Doc. 85-2, p. 35). Accordingly, there were many opportunities

15   in which the boom lift could have been mishandled or changed and the facts set forth by plaintiffs fail

16   to show that this did not occur.

17       A res ipsa loquitor jury injury instruction does not apply here and plaintiffs' are not entitled to

18   a denial of JLG's motion for summary judgment on this ground.

19   **E. Request for Judicial Notice**

20       JLG requests the Court to take judicial notice of plaintiffs' third amended complaint filed on June

21   7, 2011. (Doc. 74-4). Because it is unnecessary to take judicial notice of documents already in the

22   record, *see e.g.*, *Lew v. U.S. Bank Nat. Ass'n*, 2012 WL 1029227, *1 n.1 (N.D. Cal. Mar. 26, 2012), this

23   request is DENIED.

24                              **V. CONCLUSION AND ORDER**

25       For the reasons discussed above, this Court:

26   1.    GRANTS JLG's motion for summary judgment regarding the existence of a design or

27         manufacturing defect;

28   2.    GRANTS JLG's motion for summary judgment regarding its alleged failure to warn;

                                        12

1    3.    DENIES plaintiffs' request for a res ipsa loquitor jury instruction; and

2    4.    DENIES JLG's request for judicial notice.

21                        IT IS SO ORDERED.

22  **Dated:    August 22, 2012**              /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE